Mr. Roman Oliver, I would like to reserve three minutes for rebuttal. All right. The brief presents three issues. One relating to whether the district court properly applied an obstruction of justice enhancement. Second, whether the district court properly considered acquitted conduct as part of relevant conduct. And then third, if that is so, whether the acquitted conduct was proven by a preponderance of the evidence. I'd like to focus on the acquitted conduct consideration first because of recent case law by the United States Supreme Court. I would point out to the court that this was a trial and the jury's verdict found that Mr. Roman Oliver did engage in a conspiracy related to the distribution of cocaine and that the object of that conspiracy included less than five kilograms of cocaine. And so that brings me to the, I hope I'm pronouncing this correctly, the Allen case. I'm not sure. It's A-L-L-E-Y-N-E, so I'll say Allen if that's all right. The Allen case decided in 2013 by the United States Supreme Court. This court has held that the district court may consider acquitted conduct in determining relevant conduct for purposes of guidelines calculations as long as that acquitted conduct is proven by a preponderance of the evidence. And I think many circuits had held that prior to Allen. Well, isn't Elaine or Allen, as you called it, distinguishable because it applies to increased mandatory minimums and that's not what's at issue here? Is that distinguishable? Your Honor, I think that with respect, I think that is the issue here. In the Eileen case, is that how you – that's how my clerk pronounced it, was Eileen. Elaine, that's even better. Okay. In the Elaine case, the district court, the jury found beyond a reasonable doubt that the defendant carried a firearm but did not brandish it. The district court's probation department determined or recommended a determination that the district court find by a preponderance of the evidence that he did brandish the weapon and therefore established the guidelines range at seven years instead of five years. I think that's a direct parallel to what we have here. What we have in this case is a jury verdict that says the relevant conduct, the object of the conspiracy was not more than five kilograms of cocaine, which establishes a five to 40 year sentencing range. The district court accepted a probation officer's recommendation and found 150 kilograms of relevant conduct which would have moved, if that were in fact the jury's verdict, would have moved him into a ten to life range. So I think that the parallel is very almost exact in that in both instances, the acquitted conduct is the equivalent of what's necessary for a jury finding to move the defendant into the next higher sentencing range. With respect, I think the argument that your question suggests is precisely the argument that the minority made in the Allen-Allen case and the majority respectfully declined to follow that argument. So I think that our fact pattern is precisely on with the Allen case. Logically, I think it makes sense. What we have here is a jury verdict that says not more than five kilograms. That still leaves a pretty wide range for the judge to make determinations for a guidelines determination. So the real issue from where you stand is that your client was acquitted or found not guilty of certain counts and the things that he was found not guilty of, all of that still comes in against him. Yes, ma'am. Okay. Yes, ma'am, that's right. And part of the problem is that the way Congress created the drug sentencing statutes is we have overlapping, you know, 0 to 20, 5 to 40, and 10 to life. So there's some overlap in there. But my suggestion to the court is that it makes a huge difference. And I would ask you to just consider if I were standing in front of you saying Mr. Roman Oliver was sentenced 40 months below the lowest end of the applicable guidelines range, how you might react if that's all you know about the case, versus an argument where I say he was sentenced 50 months above the highest end of the applicable guidelines range. And that gravitational pull of the guidelines is really critical. And that's why I think that a lane was properly decided and should be applied in this case. Because then what we have is the district court makes a guidelines determination. And the guidelines determination establishes what is presumptively reasonable on appeal. But the district court still can make determinations to vary and can explain that variance to this court so that this court can properly exercise its supervisory responsibility in sentencing cases. So I'm not advocating a position that takes away power from the district court. What I am advocating is a situation that requires the district court to calculate the guidelines consistent with the jury's verdict. And then having done that, the court is free to sentence wherever the court feels is sufficient but not greater than necessary within the statutory framework. Are you saying you can't consider acquitted conduct when you sentence? No, Your Honor. What I'm saying is that you can't use acquitted conduct to establish the advisory guidelines range. And for the very reason that I talked about a minute ago. What else are you going to consider the acquitted conduct for unless you do some other 3553 analysis? It would be up to the district court to determine whether the acquitted conduct and any 3553A factors create a circumstance where a variance above the advisory guidelines range is warranted. My personal view is that you should never consider acquitted conduct in sentencing, but that's not the law. You don't get to do that. Exactly. So I don't get to make that law. But I think consistent with existing law, the district court can say I'm going to use the jury's verdict and I'm going to establish a guidelines range consistent with the jury's verdict. And then if the government proves to me by a preponderance of the evidence more relevant conduct, that's an aggravating factor that I'll consider whether or not I'm going to go above the advisory guidelines range. But in your view, you can't use the acquitted conduct even if the government proves it by a preponderance of the evidence in calculating the guidelines. That's correct. That's my view, Your Honor. I believe that the Alleyne case prohibits that because that's precisely what happened in that case. As you know, the guidelines range for a 924C use of a firearm. The guidelines in Alleyne or Alleyne or whatever it is, it was a mandatory minimum case. Your Honor, as I read the case, it was a guidelines issue. The statutory range is five to life for a 924C. And the probation office said, I'm sorry, the jury verdict said he carried but he did not brandish. The guidelines say and the statute both say if he brandishes, it's not five at the bottom, it's seven at the bottom. Which is an increase in the mandatory minimum. But the district court in that case accepted the probation officer's recommendation for the guidelines at seven rather than saying that's a mandatory minimum and I must impose that sentence. I think the district court properly found that the jury's verdict established a five to life in that case range. But then said, but for guidelines purposes, I'm going to find that he brandished it by a preponderance and therefore I'm going to establish that as the guideline sentence because the guidelines make the mandatory minimum and the guidelines equivalent. Can we jump ahead to something or back to something? I'm interested in your argument that the district court improperly applied an enhancement for obstruction of justice. Yes, Your Honor. As I understand the test, we have Dunnegan and Sassanelli establish the test. And that is that the district court must engage in a three-step process. First must identify any specific instances of the defendant's testimony that conflict with other evidence presented at trial. Then the district court must determine which part or parts of the defendant's testimony were intentionally perjurious. And then third, the district court must explain the materiality of that intentionally perjurious testimony. And I don't believe that the record shows the district court did those three steps. It is true that the district court made comments along the lines of his testimony is inconsistent with the jury verdict. Things like that. But I don't think that the district court identified any specific instances of the defendant's testimony. And I don't think the district court discussed materiality at all. And for those reasons, I think the district court's process failed to comply with Sassanelli and Dunnegan. If I recall correctly, the district court tried the case and heard all the proof. And the conclusion of the proof of the sentencing in this instance decided that the defendant lied when he took the stand and said I wasn't engaged in trafficking cocaine, I just used marijuana or something to that effect. And that would certainly seem implicitly material because that's what he was charged with doing. So it would seem that the materiality, even if he didn't say this is material, one could certainly infer his conclusion, couldn't one? I think that the Sassanelli and Dunnegan line of cases require that the district court be explicit. But even if you're correct and even if we can imply the materiality element, I still think the district court failed to identify specific instances of testimony and determine which parts of those testimonies were intentionally pejorious. And I think all three steps have to be met by the district court. Perjury is always intentional, isn't it? I'm sorry, Your Honor? Perjury is always intentional. Isn't that an element of the crime? I have struggled with that. It seemed redundant when I read the test, but that's the way the test is phrased, and so that's why I repeat it that way. Well, I see you're out of time unless you want to utilize some of your rebuttal time. No, thank you very much. Thank you. Mary Beth Young on behalf of the United States. I'll begin by addressing the acquitted conduct question. Respectfully, Aline, as I pronounce it, does not change why I addressed the question of whether acquitted conduct can be used in Congress. Precisely what's at issue here, guidelines in a drug quantity situation. Aline did address a mandatory statutory minimum, seven years for brandishing as opposed to five years for using and carrying. Using acquitted conduct to affect the advisory guideline range is a completely different question, and the Booker remedy assumes that because the guidelines are now advisory, this does not pose the same kind of difficulty that Aline was addressing. So Aline does not change why. Does the Court have any questions on that point? Not at the moment. I believe the Court has already addressed this in unpublished decisions post Aline. As to the obstruction issue, the issue was not, shall we say, hotly contested at the hearing. Counsel, in raising it, noted, Your Honor, I filed that to make a record. And the Court addressed the one point that defense counsel raised, which was that it's been my experience that any time a defendant testifies at any kind of hearing, suggesting that it's an automatic obstruction enhancement where a defendant testifies and is convicted, the Court addressed that point, which is the one that defense counsel had raised, made very clear that there are more times than you think people can testify as defendants. Have a verdict of guilty and not have the enhancement apply. The Court then went on to identify the problematic testimony here as the denial of the drug trafficking. Now, the Court had sat through the trial. If you look at transcript page 2408, it gives some context to what the denial of the drug trafficking meant. To this trial judge who had, after all, heard all this testimony, the defendant was asked, did you sell cocaine to Mr. Smith? No, I didn't. Mr. Pinton? No, I didn't. And so on. So when the judge says the denial of the drug trafficking, that means something. The United States would submit. But the Court, in making the finding of Pejuria's testimony, did not articulate that I find your testimony as to this Pejuria's or this Pejuria's. Did he or she? So that there was a clear articulation of the basis for the obstruction of justice charge. There are really two pieces to what the Court needs to do under Dunigan. First is identifying which testimony it views as Pejuria's. And second, saying something that adequately encompasses those elements of perjury so that it's clear that the Court does think it's Pejuria's. As far as the identifying, the description of the denial of the drug trafficking we submit is adequate. In the context of what the trial testimony was, nobody in the room had any question of what denial of the drug trafficking represented. Now, as to the elements, Dunigan and this Court have not required sort of an enumeration checking off the elements of perjury, but rather that it's clear from the record that what the Court found encompassed those elements. Because, after all, the purpose of Dunigan's requiring this was to make sure that it was just not automatically applied when a defendant testified. If you go back and look at Dunigan. It would certainly be concerned that you don't automatically chill an individual's ability to enter a not guilty plea, take the stand, and give testimony if that's what they choose to do. I mean, perjury is something different. It's a different set of characterizations of testimony. And that's why I think counsel says, and I think rightly so, that there has to be some specificity about what testimony has in fact perjury is. I understand you're saying that's the denial of the drug trafficking. I will just note in Dunigan, the description, if you look at what the district court had described in Dunigan itself, the district court said she denied her involvement, while the jury found she was involved in a conspiracy. So on that specificity point, Dunigan itself didn't involve any sort of quoting of transcript, which the judge may not have even had an opportunity to review at that point. Was that considered adequate? Yes. As to the elements. Doesn't that get dangerously close, though, to if a person gives testimony and the jury finds you're guilty? If it's that general, that kind of means that it can be obstruction if you go forward and admit. I think the protection there is in the second part, not so much in the description. The testimony has to be identified, and in some cases that may require a more precise description, because it's less clear which facets of the testimony are at issue. Here, the substance of the testimony is adequately described. He was asked, did you sell cocaine, and he said no, and he's convicted of a conspiracy to distribute cocaine. So I think the substance of what was considered perjurious is clear enough. The protection comes in making sure that the court did think it was not only false, but willfully so, and it was material. As to that, we think what the district court said does adequately encompass those points. The court said that the testimony was not reconcilable with what the jury had found. On key points, what the defendant denied is exactly what the jury found, and I find no reason to want to second-guess the jury. Key points suggest materiality, as does, as Judge Mays has suggested, the context here. Of course, if you deny drug trafficking in a drug trafficking case, it's material. And the court in Boring, in this court in Boring, was willing to infer that where the district court had said that Boring's testimony was in, quote, direct contradiction, that that permitted an inference of willful falseness. This is not some characterization by the district court that is in any way suggestive of mistake or confusion, nor had defense counsel suggested anything of that sort. As I noted, defense counsel's argument went only to the general point that an obstruction enhancement did not automatically apply where there was testimony by the defendant, a point which the court at 1365 made quite clear that it understood was not the case. But while you have these repeated references to the jury, it certainly seems that the court may be surrendering its function to the jury. The court does make clear on 1366, there are the references to the jury, but importantly, the court says, I find no reason to want to second-guess the jury, which the United States submits at that point. The court is considering, do I find a reason in my own independent judgment to differ from the jury's findings, and concluding, no, I do not. But couldn't that also be interpreted that, well, you testified, the jury found you guilty, and so that means that you testified when it wasn't truthful, and voila, that does seem almost like a surrender. I don't find a reason to second-guess them. The jury just found them guilty. I don't think that's the most natural interpretation here, Your Honor, because the court has already been looking at what the jury found and goes on to consider whether or not he has reason to second-guess the jury and says, no, I do not. And again, if you look at the context, how the court starts off this discussion is by saying, if the court is of the view that someone has taken the stand and lied about some essential fact in the case, then the guidelines should apply. And I think if you look at the entire context here, it's clear that the judge understood his role and was finding that that is exactly what Mr. Roman Oliver had done. I will submit, of course, it's clear here that at most, should this court find the explanation inadequate, at most, a remand for further explanation would be appropriate. What about the argument that, well, he could have enhanced for the firearm, but he probably should have, and so if you think the enhancement for obstruction was wrong, you should enhance for the firearm and it washes out? Yes. The United States had advocated, the PSR had recommended, the two-point enhancement for possession of the firearm. The district court, as to this, made a legal error in incorrectly understanding that in order to apply the firearm enhancement, the weapon had to be simultaneously present with drugs. As the United States brief points out, several cases make clear that's not the case. The firearm has to be present during the offense, which this is a conspiracy offense. It was present during the offense. Firearms were found at the time of arrest. The conspiracy was ongoing to that date. The presumption arose at that point under the guideline that the firearm was in connection with the offense. There's an opportunity to rebut the defendant offered nothing other than his testimony that he possessed it to protect his home, which the court in other cases has not found persuasive or adequate. And while there were no drugs in the home, there were multiple cell phones that were, there was testimony at trial as to the use of the phones in connection with the conspiracy. Questions? I think not. Your Honor, I would like to let the court know I was not trial counsel, so I don't know what trial counsel was thinking when he said, I'm just putting this in there for the record, so I can't comment on that. I would like to talk a little bit about the Alleen case, because the court in that case said, because the fact of brandishing aggravates the legally prescribed range of allowable sentences, it constitutes an element of a separate aggravated offense that must be found by the jury regardless of what sentence the defendant might have received if a different range had been applicable. That parallels exactly the drug statute. The quantity of drugs found by the jury establishes one applicable sentencing range by statute. The quantity of relevant conduct applied by the district court under the acquitted conduct concept is a different sentencing range. It's 10 to life. And had the jury found the 150 kilos of cocaine that the district court found by a preponderance, it would have been a 10 to life count. So I think our fact pattern exactly mirrors the Alleen fact pattern. And so I would ask the court to give careful consideration to that. Finally, the question that you raised, Judge Mays, about the firearms, I think I'm hearing the government say that as long as we charge a conspiracy, if a person touches a gun at any point during that time frame of the conspiracy, they've committed a 924C violation. That can't be the case. That cannot be the law. The statute requires that the firearm be possessed during and in relation to the drug trafficking offense. Of course, the offense could be a drug conspiracy, which is ongoing, in which the person could be in possession of the firearm. So there is some leeway there. Yes, Your Honor, but I think the rule of reason has to apply. There has to be more than simply a temporal nexus. It's not enough that just because the conspiracy went from January to December, that at some point in that year, this person held a firearm, means that they held that firearm in connection with the conspiracy. I mean, if he went to a shooting range and fired a gun, is that in connection with the conspiracy? As far as I understand it is, it doesn't have to be in connection. Well, it doesn't have to be in connection with the drugs specifically. You don't find drugs with the gun. Correct, but it has to be in connection with the conspiracy. And there was no evidence to show that the firearms at issue were in fact connected to the conspiracy. That's what I think the district court found, and properly so. Thank you all. I see my time has expired. Thank you.